OPINION OF THE COURT
John P. Lane, J.
*200 This is a proceeding pursuant to CPLR article 75 commenced by New York Casualty Insurance Company for a permanent stay of arbitration of a supplementary uninsured motorist (SUM) claim by respondent Nicole Enzinna arising from a motor vehicle accident that occurred on November 18, 2000, the day after she became 21 years old. The insurance policy in question (exhibit 1) was issued by petitioner to respondent’s mother, Patricia Enzinna. The policy, which covered two cars owned by Mrs. Enzinna, defines an insured to include the named insured, and “while residents of the same household, your spouse and the relatives of either of you or your spouse.” The policy lists respondent as a covered driver, and the vehicle she customarily drove was one of the covered vehicles.
Petitioner contends that respondent was not a resident of her mother’s home at the time of the accident. Respondent argues that the policy is ambiguous and she was, at the time of the accident, a resident of her mother’s household for coverage purposes. The issues raised were submitted to the court following a bench trial. For the reasons that follow, petitioner’s application for an order permanently staying arbitration of respondent’s SUM claim is denied.
The evidence presented establishes that respondent Nicole Enzinna, then age 17, left her mother’s home in Elma in 1997 to attend Roberts Wesleyan College outside of Rochester. While attending school there during the next two years, she lived in a dormitory, returning to her family home during summer and holiday recesses. Following her second year at Roberts Wesleyan, respondent lived for a while with her mother, who by then had moved to 2078 Hemstreet Road in East Aurora. Sometime during that summer, respondent decided to transfer to the State University of New York (SUNY) at Buffalo to continue her education.
After the summer of 1999, respondent moved into an apartment on West Ferry Street in the City of Buffalo, where she lived with her friend, Jeff Schmidt, for whose father she was working. She chose to live in Buffalo as it was much closer to the SUNY campus than her mother’s home. In early 2000, respondent and Schmidt moved to Clinton Street in Elma, where they remained until October. Respondent and Schmidt parted company, and she returned to her mother’s home for a brief period. A few weeks before the accident, respondent moved into a home owned by her friends, Chris and Kori Kent, on Argus Street in Depew to be closer to the SUNY campus. Initially, she *201 stayed in an upstairs guest room, but later moved into a room in the basement that Chris Kent and Tom Sellito, a friend of the Kents who respondent had been dating, had built. Shortly thereafter, Sellito moved into the Kents’ home and shared her accommodations.
Respondent, who testified that she continued to receive mail at her mother’s home while attending Roberts Wesleyan and thereafter, acknowledged that she also received mail at the other addresses where she lived. On her 1998 federal income tax return, respondent gave her mother’s address as her home address; her state income tax return identified that location as her mailing address (exhibit 7). W-2 statements for 1998 listed both her dormitory address in Rochester and her mother’s address in East Aurora (id.). Various communications to respondent in 1998 and 1999 concerning her student loans were addressed to her at her mother’s addresses in Elma and East Aurora (exhibits C-G). Respondent’s 1999 income tax returns identified her home and mailing address as West Ferry Street in Buffalo, although her W-2 statements for 1999 listed her mother’s address at Hem-street Road in East Aurora (exhibit 6). A W-2 statement for 2000, included with her 1999 tax records (id.), lists her address as West Ferry Street in Buffalo. Respondent’s state income tax return for 2000 reports her mother’s address at Hemstreet Road as her mailing address; duplicate first pages of her federal income tax return for that year list both the Hemstreet Road address and an address on Ashland Avenue in Buffalo as her home address (exhibit 5). Bank statements issued to respondent were directed to her at the addresses on Argus Drive, Ashland Avenue and Clinton Street (exhibit 4). Records of SUNY at Buffalo show respondent’s permanent address as 2078 Hemstreet Road and her local address as 156 Argus Drive (exhibit 2).
Respondent testified convincingly that at the time of the accident, she considered Hemstreet Road to be her permanent address. She stated that at all times while she was living away from her mother’s home she had a bed at her mother’s home, kept some of her clothes there, had a key to the house and was allowed to come and go as she pleased. She did her laundry there. Respondent further testified that she stayed with her mother on some weekends while living on West Ferry Street and Clinton Street and on some weekdays as well. She had no intention of abandoning her mother’s home as her permanent residence.
Patricia Enzinna, respondent’s mother, testified credibly that when her daughter first left home for college in 1997 her belong *202 ings remained at home. Nicole returned home for summer vacations and breaks during the school year. While Nicole was living in other places, she still had a bedroom at home, her belongings were there, she had keys to the house, and received mail there. She would return to visit and to do laundry, and occasionally stayed overnight. Nicole’s permanent address was at her home in East Aurora.
Petitioner does not argue that respondent gave up residency at her mother’s home and coverage under the policy it had issued when respondent lived in the dormitory at Roberts Wesleyan College. Conceding the transitory nature of that arrangement, it argues, nevertheless, that her moving from place to place off-campus, rather than living in a dormitory after she transferred to SUNY at Buffalo, constituted abandonment of her entitlement to SUM coverage under the policy that named her as a listed driver. Although there can be no doubt that thousands of students throughout this state and nation have lived off-campus rather than in dormitories while attending college, petitioner points to no precedent supporting its argument.
“The standard for determining residency for the purpose of insurance coverage ‘requires something more than temporary or physical presence and requires at least some degree of permanence and intention to remain’ ” (Government Empls. Ins. Co. v Paolicelli, 303 AD2d 633, 633 [2003], quoting New York Cent. Mut. Fire Ins. Co. v Kowalski, 195 AD2d 940, 941 [1993]). “An individual can have more than one residence for insurance purposes” (Canfield v Peerless Ins. Co., 262 AD2d 934, 935 [1999], lv denied 94 NY2d 757 [1999]; accord New York Cent. Mut. Fire Ins. Co. v Peckey, 298 AD2d 970 [2002], lv denied 99 NY2d 505 [2003]; Matter of Prudential Prop. & Cas. Ins. Co. [Galioto], 266 AD2d 926 [1999]; Garrett v American Mfrs. Mut. Ins. Co., 262 AD2d 1001 [1999]). These rules are consistent with the common expectation that a child away from home attending school remains a member of the household.
When interpreting a multifaceted term such as “resident” in an insurance policy, it must be construed as would the ordinary person when one purchases and pays for insurance (see Michaels v City of Buffalo, 85 NY2d 754, 757 [1995]). Language such as “while residents of the same household” must be given its “ ‘plain, ordinary, and popularly understood sense’ ” (Canfield v Peerless Ins. Co., 262 AD2d 934, 934 [1999], lv denied 94 NY2d 757 [1999], quoting Hartford Ins. Co. v Halt, 223 AD2d 204, 212 [1996], lv denied 89 NY2d 813 [1997]). Clearly, the average *203 person would not assume that a child insured under the parent’s policy will lose coverage by living off-campus while attending college, any more than a child is deprived coverage under a parent’s automobile insurance policy because he has had other residences during military service (see Peckey). Mere physical presence elsewhere is not sufficient to establish an intent by respondent to abandon her mother’s home as her residence (see Appleton v Merchants Mut. Ins. Co., 16 AD2d 361 [1962]). The evidence submitted does not support a finding that respondent desired or intended to cease being a resident of her mother’s home or that her absence from that home was anything other than transient in nature (see Nationwide Ins. Co. v Allstate Ins. Co., 181 AD2d 1022 [1992]). Her choice of roommates does not require a different conclusion.
The cases upon which petitioner relies (Matter of Aetna Cas. & Sur. Co. v Gutstein, 80 NY2d 773 [1992]; Paolicelli; Nationwide Ins. Co. v Smaller, 271 AD2d 537 [2000]; Aetna Cas. & Sur. Co. v Panetta, 202 AD2d 662 [1994]; New York Cent. Mut. Fire Ins. Co. v Kowalski, 222 AD2d 859 [1995]) may easily be distinguished from the facts of this case. In Gutstein, the respondent, a 38-year-old man who resided more than 80% of the time in his own apartment in Manhattan, was denied uninsured motorist coverage as a “family member” under his father’s insurance policy, which defined that term as a relative who is a resident of the insured’s household. In Paolicelli, the hearing court failed to state any findings of fact or conclusions of law. The Appellate Division concluded that respondent Paolicelli, who claimed defense and indemnity under his father’s motor vehicle insurance policy, had moved three years before the accident from his father’s residence in Orange County to live with his then girlfriend, later his wife, in Brooklyn. In Smaller, the respondent, who sought SUM coverage under her former husband’s policy, had admitted in sworn documents and in a police accident report that she was not living with him at the time of the accident and that her residence address was not the former marital residence. In Panetta, there is no indication in the sparse opinion that the respondent was a college student living off-campus. Finally, in Kowalski, the respondent had been living with his girlfriend and her children for over a year before an accident in which he had been driving her car and for which he sought secondary liability coverage under his parents’ insurance policy. He had been living with his parents for over three weeks before the accident as a result of a domestic dispute with his *204 girlfriend. The testimony established that similar disputes between them in the past had resulted in reconciliations, it had been their expectation that they would reconcile and continue to cohabit, and at no time had he intended that his residence with his parents would be permanent.
In addition to a permanent stay of arbitration, petitioner also seeks an order adjudging the rights and liabilities of the parties with respect to respondent’s SUM claim under her mother’s automobile liability insurance policy in effect on the date of the accident. Considering that to be a plea for a declaratory judgment, and for the reasons given above, judgment may be entered that respondent is entitled to SUM coverage under her mother’s policy, and the parties shall proceed to arbitration. Respondent’s motion to dismiss the petition made at the end of the case is otherwise granted. All other undecided motions are denied.